UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGTALE, LTD.,<br><br>        Plaintiff,<br><br>    v.<br><br>JAMES CANTON, et al.,<br><br>        Defendants. | Case No. 20-cv-01207-DMR<br><br>**ORDER ON DEFENDANT GAYLE CANTON'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

On February 18, 2020, Plaintiff Logtale, Ltd. ("Logtale") filed this action against James Canton, Gayle Canton, and the Institute for Global Futures ("IGF"). [Docket No. 1 ("Compl.").] On March 13, 2020, G. Canton filed this motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6). [Docket Nos. 12 ("Mot."), 23 ("Reply").] Logtale timely opposed. [Docket No. 21 ("Opp.").] The court finds the motion suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b).

For the reasons stated below, the motion to dismiss is denied.

**I.   BACKGROUND**

The following facts are alleged in the complaint. Logtale is a British Virgin Islands investment holding company with its principal place of business in Hong Kong. Compl. ¶ 6. IGF is a Nevada corporation with a principal place of business in San Francisco, California. *Id.* ¶ 9. The individual defendants are residents of California. *Id.* ¶¶ 7-8. J. Canton is the CEO, Secretary, Director, President, and Treasurer of IGF and its sole member. *Id.* ¶ 10. G. Canton is an employee of IGF. *Id.* ¶ 8. The Cantons were formerly married.

In 2006, Logtale invested $5 million investment in IKOR, Inc. ("IKOR"), of which J. Canton was a founder. Compl. ¶ 16. J. Canton and the other founders represented to Logtale that IKOR had developed a "new and widely marketable pharmaceutical product." *Id.* IKOR and its founders

allegedly mishandled the investment, including by using the funds for a competing business owned by the founders. *Id.* On November 9, 2011, Logtale filed a complaint against J. Canton and the other founders in the Northern District of California ("Underlying Action"). *See Logtale, Ltd. v. IKOR, Inc. et al.*, Case No. 11-cv-5452-EDL (N.D. Cal.). The complaint alleged breach of contract, breach of fiduciary duties, and breach of the implied covenant of good faith and fair dealing. The case went to trial, and the jury awarded $4 million in compensatory damages against the various defendants, and punitive damages against J. Canton in the amount of $750,000. [Compl., Ex. A.] On motions by the defendants, the court struck the punitive damages award, reduced the compensatory damages award, and entered a judgment against each of the defendants. [Compl., Ex. D.] Logtale and J. Canton both appealed the award. *cite*. On August 31, 2018, the Ninth Circuit reinstated the punitive and compensatory damages awarded by the jury, for a total judgment against J. Canton in the amount of $2,083,334. [Compl., Ex.]

On April 11, 2016, approximately three weeks after the district court entered the initial judgment, the Cantons separated. Compl. ¶ 18. G. Canton filed for divorce on May 27, 2016. *Id.* On the same date, they filed a Marital Settlement Agreement ("MSA") dividing their assets and debts. [Compl., Ex. B ("MSA").] The MSA awarded to G. Canton a residential property in Mill Valley, CA, two Bank of America accounts, an IRA, a money purchase account, a pension plan account, a profit sharing plan, some stocks, half of an attorney trust account, and a time share in Cabo. *Id.* ¶ 5. J. Canton retained IGF and all related business accounts and debts, two Bank of America accounts, certain investments, 1 million shares of 1-800-Commerce, and half of the attorney trust account. *Id.* ¶ 4. The MSA further provided that "[e]ach party agrees to be solely responsible for any and all payments on any and all debts, including credit cards, which are in his or her name alone. Each party will hold the other harmless and fully indemnify the other against liability on any obligation assumed by him or her under this Agreement." *Id.* ¶ 1.

Logtale alleges that the MSA transferred "virtually all of James Canton's assets" to G. Canton, which "render[ed] James Canton insolvent and unable to pay the judgment award to Logtale in the Underlying Action." Compl. ¶¶ 20-21. According to Logtale, the MSA was purposefully structured to award J. Canton "only minimal assets relative to the value of the assets that [he]

2

actually owned . . . with the intent and purpose to shield the vast bulk of the Cantons' assets from payment of the judgment owed to Logtale in the Underlying Action." *Id.* ¶ 23. Logtale attempted to collect on the judgment and obtained writs of execution against J. Canton in Marin, San Francisco, and Los Angeles counties. *Id.* ¶ 24. On June 24, 2019,[1] Bank of America returned a Memorandum of Garnishee in response to the Los Angeles County writ of execution, reporting that the total value of property in its control belonging to J. Canton amounted to $94.17. *Id.* ¶ 25. On June 5, 2019, Logtale obtained an Earnings Withholding Order directed to IGF. *Id.* ¶ 26. J. Canton filed a Claim of Exemption, arguing that Logtale was not entitled to garnish any of his wages due to the existing spousal support order in the amount of $6,600 per month. *Id.* ¶ 27; Compl., Ex. F. On September 3, 2019, the state court issued a wage garnishment order, directing IGF to pay Logtale $250 per month from J. Canton's wages. Compl. ¶ 28; Compl., Ex. G.

Logtale alleges that the MSA constituted a fraudulent transfer with the intent to deprive Logtale of the money J. Canton owes on the Judgment. It brings claims for relief for intentional and constructive fraudulent transfer under California's Uniform Voidable Transactions Act ("UVTA"),[2] Cal. Civil Code § 3439 *et seq.*, common law fraudulent conveyance, and conspiracy.

Jurisdiction is based on diversity.

## II.    LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001))

---

[1] The complaint states the date as June 24, 2017, but the correct date is June 24, 2019. *See* Opp. at 6 n. 3.

[2] The UVTA was formerly titled the Uniform Fraudulent Transfer Act ("UFTA").

(quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. DISCUSSION

G. Canton moves to dismiss the complaint on several grounds. She argues that (1) Logtale's claims are entirely barred by California's litigation privilege; (2) Logtale's common law fraudulent conveyance claim is barred by the statute of limitations; (3) the civil conspiracy claim is not supported by the law; and (4) Logtale improperly pleaded its claim for damages under the UVTA.

#### A. Litigation Privilege

The litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990), *as modified* (Mar. 12, 1990); *see also* Cal. Civil Code § 47(b). The primary purpose of the privilege is to afford litigants and witnesses the utmost freedom of access to

4

the courts without fear of being harassed subsequently by derivative tort actions." *Silberg*, 50 Cal. 3d at 213 (internal citation omitted). The litigation privilege is "absolute" and "attaches to any publication that has any reasonable relation to the action and is made to achieve the objects of the litigation even though published outside the courtroom and no function of the court or its officers is involved." *Pettitt v. Levy*, 28 Cal. App. 3d 484, 489 (1972). "[T]he threshold issue in determining whether the litigation privilege applies is whether the defendant's alleged conduct is communicative or noncommunicative." *Chen v. Berenjian*, 33 Cal. App. 5th 811, 819–20 (2019). The distinction between communicative and noncommunicative acts hinges on the "gravamen of the action." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006). In other words, the privilege attaches only when "the injury allegedly resulted from an act that was communicative in its essential nature." *Id.*

In this case, G. Canton argues that the litigation bars Logtale's claims because the MSA was a "privileged, communicative act." Mot. at 9. She relies on *Rusheen*, in which a judgment creditor filed false declarations of service to obtain a default judgment against a debtor. 37 Cal. 4th at 1054. The default judgment was entered, and the creditor applied for a writ of execution and levied on the debtor's property. *Id.* The debtor later moved to vacate the default judgment on the basis that he had not been served with the creditor's motion and filed a cross-complaint for abuse of process against the creditor's attorney. *Id.* The trial court granted the attorney's motion to strike the cross-complaint, holding that the attorney's filing of allegedly perjurious documents was protected by the litigation privilege as communicative conduct. *Id.* at 1055. The case advanced to the California Supreme Court, where the debtor argued that the levy imposed in executing the judgment was a noncommunicative act and thus not privileged. *Id.* at 1061. The Court rejected this argument and determined that the gravamen of the abuse of process claim was not levying on the property but rather obtaining the judgment through perjured declarations of service. *Id.* at 1062. In other words, it would not have been abuse of process to levy on the property based on a legitimate default judgment, so the abuse of process claim was based on the filing of false declarations rather than the act of levying. *See id.* Since the false declarations were communications, the litigation privilege barred the abuse of process claim. The Court then found that levying on the property was a noncommunicative act, but that act was also privileged because it was "necessarily related to the

5

allegedly wrongful communicative act." *Id.* at 1063. The Court reasoned that the litigation privilege would be thwarted if litigants were barred from bringing claims on a fraudulently obtained judgment but could still challenge the subsequent conduct necessary to enforce it. *Id.* at 1062-63.

G. Canton argues that the MSA constitutes a communication within a judicial proceeding and that therefore the litigation privilege bars claims premised on the MSA. She contends that the subsequent noncommunicative acts of dividing the assets and liabilities are also protected under *Rusheen* because such acts are "necessarily related to the communicative conduct" of forming the MSA. *Rusheen* does not support this position. That case requires courts to look at "whether the injury allegedly resulted from an act that was communicative in its essential nature." 37 Cal. 4th at 1058; *see also McDowell v. Watson*, 59 Cal.App.4th 1155, 1159 (1997) ("The gravamen, or essential nature . . . of a cause of action is determined by the primary right alleged to have been violated, not by the remedy sought.") . In *Rusheen*, the alleged wrongdoing was obtaining a default judgment through fraudulent means, not levying on the property. In this case, by contrast, the alleged wrongful conduct is the transfer of property to avoid paying a judgment; that the transfer was achieved through an MSA rather than by other means is not material. Because the division of assets and liabilities is a noncommunicative act, the litigation privilege does not bar claims premised on that conduct.

*Chen*, cited by Logtale, is illustrative. In that case, a creditor (Chen) obtained a judgment against a debtor. 33 Cal. App. 5th at 814. The debtor's brother then filed a "sham" lawsuit against the debtor based on false allegations so that the brother could obtain an agreed-upon judgment. *Id.* Every time Chen attempted to execute his judgment against the debtor, the debtor's brother would place a lien on the debtor's property to defeat Chen's claim. *Id.* at 815-16. The brother never attempted to actually obtain assets that would satisfy the fraudulently obtained judgment; the arrangement was solely to block Chen's attempts to collect on the lawful judgment. *Id.* at 816. Chen then sued both brothers for fraudulent transfer under the UVTA. The trial court held that the UVTA claim was barred by the litigation privilege since the fraudulent judgment was obtained through false communications. *Id.* The court of appeals disagreed. Examining *Rusheen*, it determined that the gravamen of a UVTA claim is "the *transfer* made or the obligation incurred by

6

the debtor, when made with the requisite intent or without sufficient consideration." *Id.* at 821 (citing Cal. Civ. Code § 3439.04(a)) (emphasis in original). The court reasoned that if the debtor had transferred his assets to his brother without a judgment, it would have been clear that the UVTA applied. *See id.* at 816, 821. Thus, the alleged injury resulted from the transfer, not the fraudulent judgment, and allowing the litigation privilege to bar the claim would circumvent the UVTA. *Id.* at 821-22. Similarly, in this case, there is no dispute that the division of assets and liabilities between the Cantons is a noncommunicative act. *See* Mot. at 9. If J. Canton had simply transferred his assets to G. Canton without an MSA, that act would not be protected by the litigation privilege. Therefore, a UVTA claim challenging the transfer is not defeated solely because the transfer was accomplished through an MSA.

G. Canton argues that the *Chen* decision is limited to the "egregious facts" of that case. That argument is untenable. The controlling question is not whether the alleged wrongdoing is egregious but instead whether it is based on a communicative or noncommunicative act. *Chen* makes clear that a fraudulent transfer, which is a noncommunicative act, is not protected by the litigation privilege simply because communications were used to achieve it. In any case, California courts have explicitly determined that a fraudulent transfer of property made pursuant to an MSA is voidable under the UVTA. *See Mejia v. Reed*, 31 Cal. 4th 657, 668 (2003) ("A transfer after dissolution can be set aside under the clear terms of the UFTA."); *In re Beverly*, 374 B.R. 221, 233 (B.A.P. 9th Cir. 2007) ("It is settled California law that a transfer accomplished through an MSA can be avoided as a fraudulent transfer pursuant to UFTA."), *affirmed in relevant part by* 551 F.3d 1092 (9th Cir. 2008); *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 838 (2005) ("Under California law, the UFTA can be applied to a property settlement agreement."). As *Mejia* observed, "it is unlikely that the Legislature intended to grant married couples a one-time-only opportunity to defraud creditors by including the fraudulent transfer in an MSA." 31 Cal. 4th at 668.

In sum, the litigation privilege does not bar Logtale's claims for fraudulent transfer under the UVTA.

**B.     Statute of Limitations**

G. Canton argues that Logtale's third claim for common law fraudulent conveyance is barred

7

by the statute of limitations. The statute of limitations for "[a]n action for relief on the grounds of fraud or mistake" is three years. Cal. Civ. Pro. § 338(d). A claim for fraud accrues when the injured party discovers the facts constituting the fraud or mistake. G. Canton contends that since Logtale's claim is premised on the MSA, the statute of limitations began running from the time that Logtale had actual knowledge of the MSA. According to G. Canton, the latest possible date that Logtale knew of the MSA was February 3, 2017, the date that it began enforcement actions by serving subpoenas *duces tecum* on the defendants in the previous action. Opp. at 13-14; *see* Docket No. 11, G. Canton's Request for Judicial Notice in Support of Motion to Dismiss ("RJN"), Ex. 1, p. 1. Since this action was filed on February 18, 2020, more than three years after that date, G. Canton argues that the common law claim is barred by the statute of limitations.

In the context of fraudulent conveyance actions, the limitations period of section 338(d) "begins to run at the time of judgment in the underlying action, but if the creditor is unaware of the fraudulent conveyance, the limitations period begins to run when the creditor discovers the fraudulent conveyance." *Cortez v. Vogt*, 52 Cal. App. 4th 917, 929-30. Section 338(d) also "provides for tolling until the party challenging the transfer obtains a *final* judgment on the underlying debt." *PGA W. Residential Assn., Inc. v. Hulven Internat., Inc.*, 14 Cal. App. 5th 156, 182 (2017), *as modified* (Aug. 23, 2017) (emphasis added). In California, "[a]n action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." Cal. Civ. Pro. § 1049. In the Underlying Action, both Logtale and the defendants appealed the judgment entered by the district court. The Ninth Circuit reversed the trial court in part and reinstated the punitive and compensatory damages awarded by the jury. Compl., Ex. E. G. Canton does not dispute that the Ninth Circuit order is the "final determination upon appeal." *See* Cal. Civ. Pro. § 1049. Since that order was filed on August 31, 2018, the three-year limitations period of section 338(d) would not expire until August 31, 2021.[3] The common law fraudulent conveyance claim was brought well

---

[3] Because the court finds that the fraudulent conveyance claim is timely as calculated from the date of final judgment, it does not reach the parties' disagreement about when Logtale discovered the alleged fraud.

8

within the limitations period.

Accordingly, G. Canton's motion to dismiss is denied as to the common law claim.

### C.      Civil Conspiracy

G. Canton moves to dismiss Logtale's fourth claim for civil conspiracy. Under California law, the elements of civil conspiracy claim are "(1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design." *Rusheen*, 37 Cal. 4th at 1062. However, there is no claim for conspiracy "unless an independent civil wrong has been committed." *Id.*

G. Canton appears to argue that Logtale has not alleged an underlying civil wrong that would support a civil conspiracy claim.[4] In the cases she upon which she relies, courts have dismissed civil conspiracy claims where the plaintiff failed to state a claim for any other civil wrongs. *See, e.g.*, *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 387-90 (2017), *as modified on denial of reh'g* (May 23, 2017) (holding that a plaintiff could not maintain a civil conspiracy claim where she had not adequately stated an underlying civil rights claim under 42 U.S.C. § 1983); *The Kind & Compassionate v. City of Long Beach*, 2 Cal. App. 5th 116, 130 (2016) (holding that the trial court properly sustained a demurrer to a civil conspiracy claims "because plaintiffs have stated no viable claims for discrimination, constitutional violations or other tort claims"). The reasoning of those cases does not apply here because Logtale asserts claims for fraudulent conveyance under the UVTA and common law. *See Gutierrez v. Givens*, 989 F. Supp. 1033, 1044 (S.D. Cal. 1997) ("California courts have explicitly permitted civil conspiracy causes of action in cases involving the UFTA."); *see also Monastra v. Konica Bus. Machines, U.S.A., Inc.*, 43 Cal. App. 4th 1628, 1644 (1996). The court has already denied the motion to dismiss Logtale's fraudulent conveyance claims; therefore, those claims can serve as the basis for a civil conspiracy claim.

The motion to dismiss the fourth claim is denied.

### D.      UVTA Damages

G. Canton argues that the damages in the complaint are improperly pleaded because they

---

[4] The opposition contains little argument on this point and instead blockquotes text from several cases without explaining the relevance of those cases to this issue.

seek the same relief that was already awarded in the Underlying Action. She relies on *Renda v. Nevarez*, 223 Cal. App. 4th 1231 (2014), where a judgment creditor brought a UFTA claim against a debtor who allegedly transferred assets to various sham entities to avoid paying the judgment. The jury found for the creditor on the UFTA claim and determined that his damages were $450,000, which was the amount that the debtor transferred to the sham entities. *Id.* at 1234. The creditor requested that the court enter a judgment against the debtor in that amount. *Id.* The court denied the request and the creditor appealed. The appellate court determined that the harm suffered by the creditor "consisted of the damages caused by the fraud, breach of contract, and negligence that underlay his prior action," for which he had already recovered a judgment. *Id.* at 1237-38. It observed that "the UFTA is remedial legislation designed to protect creditors by authorizing them to set aside transfers of property by which debtors try to avoid paying debts by putting assets beyond creditors' reach," but that the law "does not impose on the debtor any liability additional to or distinct from the existing claim of the creditor." *Id.* at 1235, 1238. Thus, permitting a personal judgment against the debtor would, under the circumstances of that case, result in a double recovery for the same harm. *Id.* at 1238. The court accordingly affirmed the trial court's decision to deny recovery of additional damages.

In this case, G. Canton argues that the complaint seeks "improper damage claims in each and every cause of action." Opp. at 12-13. She points to several provisions in the complaint that discuss attorneys' fees, costs, punitive damages, and pre- and post-judgment interest. G. Canton does not explain how that relief is duplicative of the amount awarded in the judgment against J. Canton nor does she offer any other reason why the cited relief is unavailable as a matter of law. To the extent that the complaint could be read to request other monetary relief, the court declines to decide at this stage what damages are appropriate. Even *Renda* left open the possibility that a creditor "may recover a money judgment against a debtor under the UFTA under some circumstances." 223 Cal. App. 4th at 1236. The facts in this case have not yet been developed and Logtale has not offered a specific damages theory that the court could rule on at this early stage.

Accordingly, G. Canton's motion to dismiss on this basis is denied without prejudice to challenging Logtale's requested damages at a later date.

## IV. CONCLUSION

For the reasons stated above, G. Canton's motion is denied.

**IT IS SO ORDERED.**

Dated: August 3, 2020



Donna M. Ryu
United States Magistrate Judge