1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

LOGTALE, LTD.,

Case No.  20-cv-01207-DMR

8

Plaintiff,

9

v.

**ORDER ON DEFENDANT INSTITUTE
FOR GLOBAL FUTURE'S MOTION
TO DISMISS**

10

JAMES CANTON, et al.,

11

Defendants.

Re: Dkt. No. 62

12

On February 18, 2020, Plaintiff Logtale, Ltd. ("Logtale") filed this action against James

13

Canton, Gayle Canton, and the Institute for Global Futures ("IGF").  [Docket No. 1.]  On October

14

1, 2020, the court granted IGF's first motion to dismiss.  [Docket No. 56.]  Logtale filed an amended

15

complaint on October 30, 2020.  [Docket No. 58 ("FAC").]  IGF now moves to dismiss the FAC.

16

[Docket Nos. 62 ("Mot."), 69 ("Reply").]  Logtale opposes.  [Docket No. 67 ("Opp.").]  The court

17

held a hearing on January 14, 2021.  In addition to pursuing an alter ego theory of liability against

18

IGF, Logtale also asserts that IGF is directly liable to Logtale through the actions of its agent, James

19

Canton.  Following the hearing, the court ordered supplemental briefing on the issue of whether

20

Logtale adequately alleged a theory of direct liability against IGF.  [Docket No. 71.]  The parties

21

filed supplemental briefing consistent with the court's order.  [Docket Nos. 72 ("Def. Supp. Br."),

22

73 ("Pltf. Supp. Br."), 74 ("Def. Supp. Reply").]

23

For the reasons stated below, IGF's motion is granted in part and denied in part.

24

**I.      BACKGROUND**

25

The primary allegations in this case are outlined in the court's order denying Gayle Canton's

26

motion to dismiss and are not repeated in full here.  *See* Docket No. 43.  In brief, Logtale obtained

27

a $2,083,334 judgment against James Canton in a breach of contract action.  FAC ¶ 2; *see Logtale,*

28

*Ltd. v. IKOR, Inc. et al.*, Case No. 11-cv-5452-EDL (N.D. Cal.) ("Underlying Action").  About two

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

months after the court in the Underlying Action entered the judgment, James and Gayle Canton began divorce proceedings. *Id.* As part of the divorce case, they executed a Marital Settlement Agreement ("MSA") that divided their assets and debts. FAC, Ex. B. Logtale alleges that the MSA "purposefully awarded James Canton only minimal assets . . . with the intent and purpose to shield the vast bulk of the Cantons' assets from payment of the judgment owed to Logtale in the Underlying Action." FAC ¶ 30. According to Logtale, the MSA constituted a fraudulent transfer with the intent to deprive Logtale of the money James Canton owes on the judgment.

The FAC adds more allegations specific to IGF, which Logtale alleges is a "necessary, willing, and active participant" in the Cantons' fraudulent scheme. FAC ¶¶ 7, 37. James Canton owns IGF and serves as its Chief Executive Officer, Secretary, Director, President, and Treasurer. *Id.* ¶¶ 7, 16-17. He also determines "how IGF operates," including who it employs and how much it pays those employees. *Id.* ¶ 7. According to Logtale, IGF is "knowingly employing Gayle Canton and paying her wages specifically and intentionally to enable the defendants to evade the judgment pending against James Canton." *Id.* ¶ 7. James Canton testified in the Underlying Action that, although Gayle Canton had worked for IGF before their divorce, she "only started drawing a salary from the company after the divorce." *Id.* ¶ 37. Allegedly, Gayle Canton's work for IGF does not warrant the compensation she receives and IGF pays her wages so that those funds cannot be used to satisfy the judgment against James Canton. *Id.* ¶¶ 7, 9, 37. As part of its claim for relief against IGF, Logtale asks the court to void the spousal support[1] and wage payments that IGF has paid to Gayle Canton. *Id.* ¶ 39.

Against all Defendants, Logtale brings claims for intentional and constructive fraudulent transfer under California's Uniform Voidable Transactions Act ("UVTA"),[2] Cal. Civil Code § 3439 *et seq.*, common law fraudulent conveyance, and conspiracy. Logtale also brings a restitution claim against James and Gayle Canton.

Jurisdiction is based on diversity.

---

[1] The FAC alleges that James Canton voluntarily agreed to an "exorbitant" monthly spousal support to Gayle Canton and that these payments come from the wages he receives from IGF. FAC ¶ 5.

[2] The UVTA was formerly titled the Uniform Fraudulent Transfer Act ("UFTA").

## II.     LEGAL STANDARDS FOR RULE 12(B)(6) MOTIONS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted).  However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26.  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III.     DISCUSSION

IGF moves to dismiss the claims against it on the grounds that the claims are inadequately

United States District Court
Northern District of California

pleaded.[3] All of Logtale's claims against IGF arise out of its allegations against James Canton. Accordingly, whether the claims are adequately pleaded against IGF depends on whether Logtale has articulated a viable theory of how IGF is liable for James Canton's actions.   In the hearing on IGF's first motion to dismiss, Logtale clarified that its claims against IGF are based on both an alter ego and a direct theory of liability.   Accordingly, the court will evaluate the claims under both theories.

### A.    Alter Ego Theory

District courts look to state law to evaluate alter ego claims.  *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1227 (9th Cir. 2005).   "Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations."  *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000).   However, "when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation."  *Id.*  Alter ego liability works in both directions, such that "the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound."  *Grayson Serv., Inc. v. Crimson Res. Mgmt. Corp.*, 2015 WL 6689261, at *7 (E.D. Cal. Oct. 28, 2015) (quotation marks and citation omitted).

To invoke the alter ego doctrine, a plaintiff must allege: "(1) that there is such a unity of interest and ownership that the separate personalities of the two [entities] no longer exist; and (2) that if the acts are treated as those of only one of the [entities], an inequitable result will follow." *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011).  The conditions under

---

[3] IGF also argues that, under the principle of collateral estoppel, Logtale is barred from arguing that the parties' spousal support order was obtained through fraud.  Mot. at 2-3.  IGF did not brief the legal standards for a finding of collateral estoppel.  Further, "[t]he availability of collateral estoppel is a mixed question of law and fact," which makes it unsuitable for determination without a factual record.  *See Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988).  Accordingly, IGF's motion to dismiss is denied on this point without prejudice to raising the argument at a later stage.   As discussed in footnote 4, however, Logtale has not explained how IGF's payment of spousal support pursuant to a court order is indicative of fraud by IGF.

United States District Court
Northern District of California

which the doctrine may be applied "necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court." *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (Ct. App. 1962). Courts have examined a host of non-exclusive factors in deciding whether to apply the doctrine, including "commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses," "the treatment by an individual of the assets of the corporation as his own," "the holding out by an individual that he is personally liable for the debts of the corporation," "the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization," "the disregard of legal formalities and the failure to maintain arm's length relationships among related entities," "the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another," and "the formation and use of a corporation to transfer to it the existing liability of another person or entity," among others. *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 249–50 (1999). Because the alter ego doctrine is "founded on equitable principles," its application is "not made to depend upon prior decisions involving factual situations which appear to be similar." *Vista v. USPlabs, LLC*, No. 14-cv-00378-BLF, 2014 WL 5507648, at *2 (N.D. Cal. Oct. 30, 2014) (quoting *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1108 (2013)). Instead, "the conditions under which the corporate entity may be disregarded, or the corporation be regarded as the alter ego of the stockholders, necessarily vary according to the circumstances in each case . . . ." *Morrison Knudsen Corp.*, 69 Cal. App. 4th at 250 (cleaned up).

In the hearing on IGF's first motion, the court found that the initial complaint did not adequately plead an alter ego theory because it relied solely on James Canton's status as the owner and controlling member of IGF, which is insufficient to apply the alter ego doctrine. *See Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law."). The FAC adds additional details about IGF. First, it alleges that James Canton

United States District Court
Northern District of California

makes the hiring and salary determinations for the company.  *See* FAC ¶ 7.  Logtale further alleges that James Canton works with IGF to set his own salary at an amount insufficient to satisfy the judgment against him while at the same time paying Gayle Canton a salary to which she is not entitled.[4]  *Id.* ¶¶ 8-9.   Essentially, Logtale's theory is that James Canton uses IGF to transfer his assets to Gayle Canton in the form of wages.  Because he allegedly has access to her assets, the money that IGF pays to her also goes to him.  This arrangement allows James Canton to use IGF as the vehicle through which he can transfer his own assets back to himself and avoid subjecting those funds to garnishment by Logtale.

Logtale's allegations about the fraudulent payment scheme between IGF, James Canton, and Gayle Canton are sufficient to plead an alter ego theory of liability.  Taken as true, the allegations invoke some  alter ego factors recognized by other courts, including diverting or manipulating assets between himself and IGF to the detriment of a creditor and using IGF as a subterfuge of illegal transactions.  *Morrison Knudsen Corp.*, 69 Cal. App. 4th at 249-50.  Moreover, the allegation that James Canton is using IGF to shield his assets from debtors is exactly the kind of inequity the alter ego doctrine is intended to prevent.  *See Toho-Towa Co.*, 217 Cal. App. 4th at 1109 (finding an inequitable result where a defendant shifted liability to its alter ego "after ensuring that [the alter ego] would have no funds to pay its debts"); *Pac. Mar. Freight, Inc. v. Foster*, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010) ("Inequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability.").

Application of the alter ego doctrine is primarily a question of fact and whether or not Logtale's claims against IGF are meritorious remain to be seen.  *See Toho-Towa Co., Ltd.*, 217 Cal. App. at 1108.  However, at the pleadings stage, the allegations in the FAC are sufficient to state a

---

[4] As part of the first motion to dismiss, Logtale argued that IGF's wrongdoing is also evidenced by James Canton's spousal support obligation, which is paid by IGF from his wages.  *See* Docket No. 51 at 7.  In the hearing on the motion, the court noted that IGF is legally obligated to deduct the spousal support amount from James Canton's wages, pursuant to an Earnings Assignment Order entered by the state court judge in the Cantons' divorce case.  *See* Docket No. 67-1, Logtale's Request for Judicial Notice, Ex. 1, Attachment B.  Barring further development or explanation of this theory, the court does not see how IGF could legally refuse to make the payments, even if the Cantons fraudulently obtained the spousal support order in order to transfer James Canton's assets to Gayle Canton.

United States District Court
Northern District of California

1  claim against IGF as an alter ego of James Canton.

2      **B.      Direct Liability**

3          Under the UVTA, "a transfer is fraudulent, both as to present and future creditors, if it is

4  made '[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.'" *Mejia v. Reed*,

5  31 Cal. 4th 657, 664 (2003) (quoting Cal. Civ. Code § 3439.04(a)).  "Fraudulent intent may be

6  proven on the basis of circumstantial evidence," considering any or all of the eleven factors listed

7  in Cal. Civ. Code § 3439.04(b).[5]  *Kelleher v. Kelleher*, Case No. 13-cv-05450-MEJ, 2014 WL

8  1117805, at *4 (N.D. Cal. Mar. 19, 2014).

9          Logtale alleges that IGF is a "necessary, willing, and active participant" in the Canton's

10  fraudulent scheme to shield assets from Logtale.  FAC ¶ 7.  Logtale points out that James Canton

11  makes the hiring and salary decisions for IGF.  *Id.* ¶ 7.  According to Logtale, IGF (through its

12  controlling agent James Canton) pays Gayle Canton wages that it knows she has not actually earned.

13  *Id.* ¶ 9.  At the same time, James Canton allegedly worked with IGF to set his own salary at an

14  amount insufficient to satisfy Logtale's judgment.  *Id.* ¶ 8.  As explained above, IGF's employment

15  of Gayle Canton is allegedly a sham intended to fraudulently transfer James Canton's assets to Gayle

16  Canton.  *See id.* ¶¶ 7, 9, 37.  Since James Canton allegedly has access to those funds after they are

17  _____

18  [5] The eleven factors include:

19      (1) Whether the transfer or obligation was to an insider.

20      (2) Whether the debtor retained possession or control of the property transferred after the
        transfer.

21      (3) Whether the transfer or obligation was disclosed or concealed.
        (4) Whether before the transfer was made or obligation was incurred, the debtor had been
22      sued or threatened with suit.
        (5) Whether the transfer was of substantially all the debtor's assets.

23      (6) Whether the debtor absconded.
        (7) Whether the debtor removed or concealed assets.
24      (8) Whether the value of the consideration received by the debtor was reasonably
        equivalent to the value of the asset transferred or the amount of the obligation incurred.
25      (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was
        made or the obligation was incurred.
26      (10) Whether the transfer occurred shortly before or shortly after a substantial debt was
        incurred.
27      (11) Whether the debtor transferred the essential assets of the business to a lienor that
        transferred the assets to an insider of the debtor.

28  Cal. Civ. Code § 3439.04(b).

transferred, this scheme would permit him to retain assets without subjecting them to garnishment by Logtale.

"A corporation can act only through its agents." *United States v. Trans Cont'l Affiliates*, No. C-95-1627-JLQ, 1997 WL 26297, at *5 (N.D. Cal. Jan. 8, 1997). Thus, any theory of direct liability against IGF necessarily must involve an agency relationship. At the hearing, the court noted that neither party briefed the issue of agency.[6] It accordingly ordered the parties to file supplemental briefing regarding IGF's liability for the actions of its agent James Canton. *See* Docket No. 71 ("IGF shall explain how Plaintiff's amended complaint is not sufficient to allege direct liability against IGF under the theory that IGF was acting through its agent and/or officer James Canton.").

In its supplemental brief, IGF argues that corporations are only liable for the tortious acts of its employees and/or agents when those actions were taken within the "scope and course" of the agency relationship. Def. Supp. Br. at 2. According to IGF, there must be a "causal nexus" between the alleged wrongdoing and the agent's corporate duties. *Id.* It asserts that Logtale has not sufficiently alleged the existence of such a nexus because the nature of IGF's business as a "think tank that offers business strategy and forecasts about leading-edge innovations and trends" has nothing to do with the alleged fraudulent transfer of money between James and Gayle Canton. *See id.* at 2-3. Logtale responds that IGF inappropriately focuses on its business purpose when the issue is instead whether James Canton had apparent authority to act on behalf of IGF in committing the alleged wrongdoing. Pltf. Supp. Br. at 4. Logtale argues that James Canton's fraudulent manipulation of his own salary and Gayle Canton's salary must be imputed to IGF because James Canton directed those payments within his authority as IGF's sole officer and director. *Id.* at 3.

The Third Restatement of Agency distinguishes between a principal's direct and vicarious liability.[7] *See* Rest. 3d Agency § 7.03. A principal is directly liable to a third party harmed by its

---

[6] Logtale asserts that the court's concern was whether corporations can be held liable for fraud. Pltf. Supp. Br. at 1. This is patently incorrect. The issue is not whether a corporation can be liable for fraud in general but rather whether Logtale has sufficiently alleged that IGF is liable for fraud through an agency relationship.

[7] Vicarious liability may apply to a principal when its agent is "an employee who commits a tort while acting within the scope of employment; or . . . commits a tort when acting with apparent authority in dealing with a third party on or purportedly on behalf of the principal." Rest. 3d Agency § 7.03. Both parties use language that is suggestive of vicarious liability, such as "scope of agency"

agent's conduct when the agent "acts with actual authority or the principal ratifies the agent's conduct." *Id.* § 7.03.   An agent acts with actual authority when he "reasonably believes, in accordance with manifestations of the principal, that the principal wishes the agent so to act." *Id.* § 7.04.   In this case, the FAC alleges that "James Canton and IGF intentionally have paid and continue to pay Gayle Canton a salary that she would not otherwise be paid and to which she is not entitled for the sole purpose of moving those funds so they cannot be used to satisfy the judgment awarded to Logtale." FAC ¶ 9.   Logtale also alleges that James Canton deliberately set his own salary at an amount insufficient to satisfy the judgment. *Id.* ¶ 8.   Absent from the FAC, however, are any allegations about whether James Canton reasonably believed that IGF wanted him to manipulate his and Gayle Canton's salary.   There are also no allegations that IGF ratified James Canton's conduct. Thus, while Logtale's allegations are consistent with James Canton *using* IGF to forward his own fraudulent ends, they do not explain how IGF acted fraudulently through James Canton as its agent. Logtale therefore has not sufficiently alleged that IGF is directly liable for the harm it suffered as a result of James Canton's conduct.

None of the cases cited by Logtale support its position.   In *Abdo v. Fitzsimmons*, the court determined that the plaintiff adequately alleged that the agent acted "within the scope of his employment and in furtherance of [the principal's] interests."  No. 17-cv-00851-EDL, 2018 WL 11220494, at *21 (N.D. Cal. May 22, 2018).   As explained above, the FAC does not suggest that James Canton's alleged fraud in any way furthered IGF's interests.   Logtale also cites *In re McKesson HBOC, Inc. Sec. Litig.* for the proposition that a corporation "is vicariously liable for the fraud of its own officers."  *See* 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000).   However, that case involved a corporate officer who allegedly made false representations about the company's revenues.  *See id.*  The alleged wrongdoing in that case was closely connected with the company's interests; here, by contrast, Logtale does not explain why James Canton's alleged fraud in the context of his divorce benefits or concerns IGF at all.

and "apparent authority."  *See* Def. Supp. Br. at 1-2; Pltf. Supp. Br. at 3.  However, Logtale has never asserted a theory of vicarious liability against IGF.  Given that there have now been three rounds of briefing on IGF's potential liability, the court declines to consider whether there is a viable theory of vicarious liability.

As Logtale points out, a corporation may sometimes be liable for actions that its agent took solely for personal reasons and against the interests of the company. Pltf. Supp. Br. at 4. In general, "a rogue agent's actions or knowledge are not imputed to the principal if the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes or those of another person." *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) (cleaned up). However, an exception to the so-called "adverse interests" rule holds that a principal may be liable for a faithless agent's conduct when an innocent third party relies on representations that the agent made with apparent authority. *Id.* at 476-77. This exception does not appear to apply in this case. Logtale does not identify any representations by James Canton that it relied on; indeed, it is unclear how the exception would apply in a case like the present one that alleges fraudulent conveyance rather than fraudulent misrepresentation.

In sum, the FAC at most suggests that James Canton used IGF to complete fraudulent transfers to Gayle Canton to forward his own personal interests. There are no non-conclusory allegations that James Canton acted with actual authority as the agent of IGF when he engaged in the allegedly fraudulent conduct. Accordingly, Logtale's allegations are not sufficient to plead that IGF is liable under a direct theory of liability. However, it is not clear that amendment on this issue would be futile. For example, Logtale may be able to add non-conclusory allegations that IGF ratified the conduct of its agent, James Canton. Accordingly, the court will allow Logtale one final opportunity to allege a direct theory of liability against IGF.

## IV.   CONCLUSION

For the reasons stated above, IGF's motion is granted in part and denied in part. The motion is granted insofar as it alleges claims against IGF under a direct theory of liability. It is denied insofar as IGF's liability relies on an alter ego determination. Logtale is granted leave to amend the complaint to add allegations supporting a direct theory of liability against IGF. Any amended complaint shall be filed no later than June 3, 2021. **Logtale must plead its best case.**

1    **IT IS SO ORDERED.**

2    Dated: May 13, 2021



3

4                          Judge Donna M. Ryu
                           United States Magistrate Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California