UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGTALE, LTD.,<br><br>  Plaintiff,<br><br>  v.<br><br>JAMES CANTON, et al.,<br><br>  Defendants. | Case No. 20-cv-01207-DMR<br><br>**ORDER DENYING DEFENDANT INSTITUTE FOR GLOBAL FUTURES'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 96 |

On February 18, 2020, Plaintiff Logtale, Ltd. ("Logtale") filed this action against James Canton, Gayle Canton, and the Institute for Global Futures ("IGF") (collectively, "Defendants"). [Docket No. 1.] On June 3, 2021, Logale filed its Second Amended Complaint ("SAC"). [Docket No. 92.] IGF now moves to dismiss direct liability claims against it in the SAC. *See* Mot. [Docket No. 96]; Reply [Docket No. 102.][1] Logtale opposes ("Opp'n"). [Docket No. 101.] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the reasons stated below, IGF's motion is denied.

**I.  BACKGROUND**

The primary allegations in this case are outlined in the court's order denying Gayle Canton's motion to dismiss the initial complaint and are not repeated in full here. *See* 8/3/2020 Order [Docket No. 43.] In brief, Logtale obtained a $2,083,334 judgment plus interest against James Canton in a breach of contract action. SAC ¶¶ 1-2; *see Logtale, Ltd. v. IKOR, Inc*, No. 11-cv-5452-EDL (N.D. Cal.) ("Underlying Action"). About two months after entry of judgment in the Underlying Action, James and Gayle Canton[2] began divorce proceedings. *Id.* As part of the

---

[1] The notice of motion filed at Docket No. 99 is a duplicate of the notice filed the same day at Docket No. 96.

[2] This order refers to them as "J. Canton" and "G. Canton."

1    divorce case, they executed a Marital Settlement Agreement ("MSA") that divided their assets and
2    debts. SAC Ex. B. J. Canton admitted that the MSA "transferred the 'vast majority of the value
3    of his community property' to G. Canton" but that "'[p]rimarily what [he] got was control'" of
4    IGF. SAC ¶¶ 4, 6. Logtale claims that IGF hired G. Canton after the divorce—"and, thus, after
5    the Jury Verdict" in the Underlying Action. *Id.* ¶¶ 9, 39.

6          The SAC alleges that the Cantons' conduct amounts to a "fraudulent scheme to deprive
7    Logtale of the ability to collect on its judgment" in the Underlying Action. SAC ¶ 7. The MSA
8    "purposefully awarded [J. Canton] only minimal assets . . . with the intent and purpose to shield
9    the vast bulk of the Cantons' assets from payment of the judgment." *Id.* ¶ 32. Also, "[a]s part of
10   the fraudulent scheme, IGF is knowingly employing [G. Canton] and paying her wages
11   specifically and intentionally to enable the defendants to evade the judgment" as well as a wage
12   garnishment order issued to satisfy the judgment. *Id.* ¶¶ 37-39. The SAC claims that Defendants
13   "purposefully manipulated [J. Canton's] personal finances" through provisions in the MSA, by
14   employing G. Canton, and by "fraudulent setting [J. Canton's] own wages at an amount that
15   leaves nothing for Logtale to garnish." *Id.* ¶¶ 38-39.

16         According to Logtale, the MSA constituted a fraudulent transfer with the intent to deprive
17   Logtale of the money J. Canton owes on the judgment. The SAC brings claims against all
18   Defendants for intentional and constructive fraudulent transfer under California's Uniform
19   Voidable Transactions Act ("UVTA"), Cal. Civil Code § 3439.04 and .05 *et seq.*, common law
20   fraudulent conveyance, conspiracy, and restitution.

21         On May 13, 2021, the court granted in part and denied in part IGF's motion to dismiss
22   Logtale's First Amended Complaint ("FAC"). ("Order") [Docket No. 87.] The court denied the
23   motion as to allegations arising under an alter ego theory but granted the motion with leave to
24   amend with respect to claims arising under a theory of direct liability. Order at 10.

25         The SAC adds new allegations and supplements existing ones from the FAC that seek to
26   establish direct liability against IGF. *See, e.g.*, SAC ¶¶ 9, 10, 11, 14, 38, 39. First, the SAC offers
27   new allegations on how IGF participated in and benefited from the "fraudulent scheme" to avoid
28   paying the judgment against J. Canton. *Id.* ¶ 9. "IGF payroll records show that the company

'hired' [G. Canton] on June 1, 2016 and gave her an unspecified 'raise' about a month later, on July 6, 2016." *Id.* "[J. Canton] subsequently testified that IGF has been paying [G. Canton] $4,000 per month in salary." *Id.* "Although [G. Canton] worked for IGF before their divorce, [J.] Canton testified that IGF started paying her only after the divorce and, thus, after the Jury Verdict." *Id.* This "scheme" to pay G. Canton a salary through funds that would otherwise be used to satisfy the judgment "directly benefit[ed] IGF and further[ed] its business interests[.]" *Id.* ¶ 10. The scheme also "benefit[ed] the defendants collectively and individually." *Id.* ¶ 9. The SAC explains that IGF spends "approximately forty (40) percent of its annual revenue on marketing, business and product development, client services and research," of which a "large part . . . goes to cover [J. Canton's] travel expenses and to entertaining clients." *Id.* ¶ 10. "IGF would go out of business if [J.] Canton had to pay the judgment owed to Logtale because, if he did so, that money could not be used to travel and conduct business development efforts." *Id.* The SAC reiterates that absent its "fraudulent scheme to divert funds" through the MSA, "the company risks not being able to undertake the business opportunities that keep it in business." *Id.* IGF therefore maintained "active participation" in the scheme, "including by accepting the benefit of the wrongfully diverted funds to facilitate [J. Canton's] business development efforts on the company's behalf." *Id.* ¶ 11.

The SAC also provides new allegations about J. Canton's role with respect to IGF. He is "IGF's sole member and controlling agent" with "intimate knowledge of IGF's finances." SAC ¶ 11. J. Canton "has access to—and uses—some or all of the funds that he should have paid to Logtale (but has not) for IGF's benefit." *Id.* ¶ 9. He allegedly uses those for "various business development efforts that directly benefit IGF and further its business purpose." *Id.* ¶¶ 9, 38-39

In addition, the SAC includes new allegations regarding Defendants' knowledge of the scheme. "Defendants, and each of them, are . . . fully aware that [J. Canton] has access to those improperly diverted funds . . . and that he uses those funds for IGF's benefit." SAC ¶ 9; *see also id.* ¶ 39 ("Defendants, and each of them, are fully aware of and support this fraudulent scheme to the benefit of each of the defendants."). J. Canton is "well aware of the need to divert money to IGF to keep the company viable," and he "reasonably believed IGF would want him to do

3

whatever was necessary as its controlling agent to keep the company in business." *Id.* ¶ 11.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

## III. DISCUSSION

As the court previously ruled, "any theory of direct liability against IGF necessarily must involve an agency relationship." Order at 8. "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Batzel v. Smith*, 333 F.3d 1018, 1035 (9th Cir. 2003) (quoting Restatement (Third) of Agency § 1.01; *Desuza v. Andersack*, 63 Cal. App. 3d 694, 699 (1976)). A principal is directly liable to a third party harmed by its agent's conduct when the "agent acts with actual authority or the principal ratifies the agent's conduct." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448-49 (9th Cir. 2018) (citing Restatement (Third) of Agency § 7.04).[3]

---

[3] "An agent acts with actual authority when . . . the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *RingCentral, Inc. v. Nextiva Inc.*, No. 19-cv-2626-NC, 2021 WL 2476879, at *10 (N.D. Cal. June

4

IGF moves to dismiss the allegations in the SAC that it is directly liable under a ratification theory as a principal for the unlawful conduct of its agent, J. Canton.[4] IGF argues that that "the new allegations [in the SAC] do not reveal any benefit to IGF, any ratification it made to any of [J. Canton]'s alleged actions, any steps that IGF took to clothe [J. Canton] with ostensible authority on non-corporate business or any other actions that could support any direct theory of liability of IGF as a controlling principal." Mot. at 3-4. Logtale counters that the new allegations demonstrate a "straight-forward" theory of direct liability under both actual authority and ratification theories, in which IGF is "helping the defendants divert and shield funds that would otherwise be . . . made available to Logtale to satisfy the judgment." Opp'n at 1. Logtale contends that J. Canton "reasonably believed IGF would want him to perpetrate the fraud as its agent, and [that] IGF ratified [J.] Canton's fraudulent conduct." *Id.*[5]

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (quoting Restatement (Third) of Agency § 4.01). "[R]atification creates consequences of actual authority, including, in some circumstances, creating an agency relationship when none existed before." *Id.* (citing Restatement (Third) of Agency § 4.01 cmt. b). A principal may ratify a party's acts, thereby forming an agency relationship, through a "knowing acceptance of the benefit . . . [which] means that the principal must have 'knowledge of material facts,' also described as 'actual knowledge.'" *Id.* (quoting Restatement (Third) of Agency §§ 4.01 cmt. d, 4.06.). In other words, "[a] person may ratify an act . . . by receiving or retaining benefits it generates if the person has knowledge of material facts." *Id.* at 1075 (quoting Restatement (Third) of Agency § 4.01 cmt. g) (alterations in original).

---

17, 2021) (quoting Restatement (Third) of Agency § 2.01); *see also* Restatement (Third) of Agency § 7.04 (same).

[4] IGF does not address actual authority in its motion. *See* Mot. at 2, 4-5. It therefore has conceded that the SAC plausibly alleges actual authority.

[5] On reply, IGF for the first time argues that "IGF is only responsible for conduct that breaches a duty that IGF owes to a third party. Nothing in the [SAC] shows the violation of any duty." Reply at 3. The court will not entertain new arguments raised for the first time on reply.

5

The SAC sufficiently pleads that IGF ratified J. Canton's alleged scheme because it alleges that IGF had actual knowledge of the material facts and accepted the benefits of the scheme. The SAC alleges that IGF had actual knowledge of J. Canton's "fraudulent scheme by knowingly and intentionally employing [G. Canton] under false pretenses." SAC ¶ 9. The SAC cites testimony by J. Canton that "IGF started paying her only after the divorce and, thus, after the Jury Verdict." *Id.* IGF was therefore "fully aware of . . . this fraudulent scheme." *Id.* ¶ 39; *see also id.* ¶¶ 9, 38.[6] The SAC further claims that IGF benefited from the "wrongfully diverted funds to facilitate [J. Canton's] business development efforts on the company's behalf." *Id.* ¶ 11; *see also id.* ¶ 9 ("[J. Canton] and IGF intentionally have paid and continue to pay [G. Canton] a salary . . . so the [funds] cannot be used to pay the judgment awarded to Logtale, which benefits the defendants collectively and individually.") The activities to avoid paying the judgment "unjustly enrich[ed] IGF" and otherwise "directly benefit[ed] IGF and further[ed] its business purpose." *Id.* ¶¶ 14, 38, 39. These claims are enough to plausibly allege direct liability through ratification.[7]

IGF's arguments against direct liability are unavailing. IGF accurately summarizes Logtale's theory of direct liability when it states that "because IGF supposedly accepted the *benefits* of the alleged money laundering scheme, it *ratified* those actions," but goes on to make conclusory, unsupported assertions that "IGF received no benefits" and that "mere acceptance of benefits has never been the definition of ratification." Mot. at 5. IGF is wrong. The Restatement clearly states that ratification may occur through a "knowing acceptance of the benefit." *Henderson*, 918 F.3d at 1073 (quoting Restatement (Third) of Agency § 4.01 cmt. d). As

---

[6] Construing the allegations as true for the purposes of this motion, J. Canton's alleged knowledge of and participation in the activities at the center of this lawsuit—including "manipulating his and [G. Canton's] assets and salaries to facilitate the fraudulent garnishment exemption claim"—may be imputed to IGF as he was acting as "IGF's sole member and controlling agent" and its "owner." SAC ¶¶ 11, 16; *see Uecker v. Zentil*, 224 Cal. App. 4th 789, 798 (2016) ("It is settled California law that knowledge of an officer of a corporation within the scope of his duties is imputed to the corporation" (quotation omitted)).

[7] For the purposes of ratification the SAC need not allege that IGF expressly or impliedly communicated its authority to J. Canton. *See Henderson*, 918 F.3d at 1075 ("To constitute ratification, therefore, a principal need not explicitly communicate consent to an agent.").

1  discussed above, the SAC plausibly alleges that IGF "accept[ed] the benefit of the wrongfully
2  diverted funds" and was "fully aware" of the scheme in the MSA to divide the Cantons' assets and
3  employ G. Canton as a means to evade the judgment. SAC ¶¶ 9-11, 38-39. IGF also argues that
4  the new allegations "do not show any participation by IGF in the alleged marital drama between
5  [J. and G. Canton] or the debtor creditor drama between [J. Canton] and Logtale." Mot. at 5. To
6  the contrary, the SAC alleges IGF's "integral role" and "active participation" in the alleged fraud.
7  SAC ¶¶ 7-11; 38-39. IGF's final argument, that the allegations are insufficient to allow a "trier of
8  fact . . . to infer . . . that it was really IGF behind the curtain pulling the levers," is irrelevant at the
9  pleadings stage, where the court must accept all factual allegations as true. *See* Mot. at 2. For the
10 purposes of this motion, the SAC adequately alleges direct liability against IGF under a
11 ratification theory.

## IV. CONCLUSION

For the foregoing reasons, IGF's motion to dismiss the SAC is denied.

**IT IS SO ORDERED.**

Dated: December 14, 2021



Donna M. Ryu
United States Magistrate Judge